**GIBRALTAR SAVINGS ASSOCIATION, et al., Appellants,**

v.

**FRANKLIN SAVINGS ASSOCIATION, et al., Appellees.**

No. 13378.

Court of Civil Appeals of Texas, Austin.

May 20, 1981.

Rehearing Denied June 17, 1981.

Larry Temple, Austin, for Gibraltar Savings Association.

Mark White, Atty. Gen., Nancy O. Ricketts, Asst. Atty. Gen., Austin, for L. Alvis Vandygriff.

Thomas A. Rutledge, Sneed, Vine, Wilkerson, Selman & Perry, Austin (on appeal only), for appellees.

POWERS, Justice.

This appeal is taken from a final judgment of the 200th Judicial District Court of Travis County, Texas, entered in its judicial review of a final order of the Savings and Loan Commissioner of The State of Texas.

Franklin Savings Association and Southside Savings and Loan Association sued the Commissioner to set aside his order approving a branch office application made by Gibraltar Savings Association. Gibraltar intervened in the suit. The district court's judgment set aside the Commissioner's order and from that judgment the Commissioner and Gibraltar appeal. Appellees, Franklin and Southside, bring a cross-appeal in the particulars set out below.

The dispute arises from the following events. Lockhart Savings and Loan Association (not a party to this appeal) filed an application with the Commissioner seeking permission to establish and operate a branch office to be located at Hamilton Road and Highway 183 in the city of Austin, Travis County, Texas. A preliminary hearing on the application was held on July 2, 1979. Franklin protested the application and the application was set for hearing on October 30, 1979.

On October 16, 1979, Gibraltar, having previously filed an application for a branch office in Tarrant County, Texas, filed an amendment thereof requesting permission to establish a branch office in Travis County. Without notice and hearing, the Commissioner ordered that Gibraltar's application be heard on October 30, 1979, consolidating for hearing the applications filed by Gibraltar and Lockhart.

The Commissioner purported to act under the provisions of several regulations established by the Savings and Loan Department. Regulation 1.3 pertains to applications for *new* charters and provides as follows:

"Within ten (10) days after the filing of a proper application, the Commissioner shall set a date for a hearing on the application, which date shall not be more than ninety (90) days after the application is filed.

"If an application for charter is filed at least ten (10) days before the date set for hearing of a pending charter application, *for a location which, in the opinion of the Commissioner, is for the same community as the pending application, such application shall be heard in one hearing to be held upon the date set for the pending application.* In such cases, the [second filed application] shall cause the first two paragraphs of the notice required by section 1.4 of these Rules to be published at least five (5) days before the date of such hearing, and shall file proof of such publication at the hearing. In addition, the Commissioner shall mail notice of such joint hearing to the parties set out in section 1.5 of these Rules."

Regulation 1.4 sets out the form of notice that must be published. Regulation 1.5 requires the Commissioner to mail notice of the hearing to all savings and loan associations having "offices in the county of the proposed location or in any adjoining or adjacent counties within a proximity that might be serviced or affected by the proposed application." Regulation 2.3 pertains to *branch office* applications filed by established savings and loan associations and provides as follows:

"Each application for a branch office shall be set for a hearing, notice given, hearing held, and decision reached in the same manner and within the same time *as hearing provided for new charter applications . . .*"

Regulation 2.3 thus incorporates the provisions of Regulation 1.3 which directs consolidated hearings when the Commissioner is of the opinion that two applications seek to establish new institutions "for the same community."

The provisions of these regulations as to notice and consolidation were, followed in the present case, with the result, however, that the parties to the consolidated proceedings were afforded only eleven days actual notice that Gibraltar's amended application would be heard on October 30, 1979.

■ Appellees argue that the procedure followed in this case, though technically

permitted by the regulations of the Savings and Loan Department, resulted in their being denied the reasonable notice to which they are entitled as a matter of statutory and constitutional right. They point to the "due process" clause of the 14th Amendment to the United States Constitution and to the provisions of the Texas Administrative Procedure and Texas Register Act (TAPTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a. Section 13(a) of that statute provides that "[i]n a contested case, all parties must be afforded an opportunity for hearing after *reasonable* notice of *not less* than 10 days." (Emphasis added). We believe appellants correctly interpret this notice requirement when they say it always requires *reasonable* notice, which may never be less than ten days.

Seven days after receiving actual notice of the hearing, Southside filed with the Commissioner two documents, one entitled "Plea in Abatement," the other entitled "Motion for Continuance." Both pleadings were for the purpose of obtaining a delay in the hearing and the issue of whether the notice of hearing was reasonable was adjudicated in the context of these two motions.

■ The Plea in Abatement claimed that there was "no rule specifically providing for branch applications to be consolidated . . ." as the Commissioner had ordered. Regulation 2.3, quoted above, expressly and specifically authorized the Commissioner to order the two applications consolidated for hearing in this case if he was of the opinion that they sought branch offices "for the same community." His final order states that he had formed the opinion that the branch offices were "for the same community" and we find substantial evidence in the agency record to support his opinion. The claimed basis for abatement of the hearing was therefore erroneous.

In addition, the Plea in Abatement averred as a ground for abatement the following:

"[I]t would be physically impossible for Southside Savings and Loan Association to prepare for the hearing on such short

notice when expert testimony is needed to defend the position of Southside Savings and Loan Association. That to conduct the hearing without proper notice under the statute and rules would be a violation of procedural due process, which is guaranteed under the Constitution of the State of Texas and the United States of America."

The Motion for Continuance requested that the Commissioner grant the continuance, and set a future date for hearing, on the following ground only:

"That Southside Savings and Loan Association proposes to prove that there is no public need for a branch office of Gibraltar Savings Association . . . [and] if same is granted it will cause undue harm to Southside Savings which is a newly chartered association not yet open for business; that in order to prove such facts it will be necessary to retain a competent and qualified Economist to make a study and prepare the demographics for a presentation to the Commissioner, to support the contentions of Southside Savings; that it will be physically impossible to retain such an expert and carry out the necessary study for the October 30th hearing."

In substance then, appellee alleged that it had inadequate time to prepare for the hearing on October 30.[1] The hearing officer overruled both the Plea in Abatement and the Motion for Continuance.

The district court agreed with appellees' contention that they were not furnished reasonable notice in the circumstances created by the consolidation. In its conclusions of law, the district court ruled that the lack of reasonable notice deprived Southside of a meaningful opportunity to prepare and present the merits of its case

and to meet and test the merits of Gibraltar's case. The court concluded further that the action of the Commissioner, in ordering the consolidation, resulted in an unwarranted, arbitrary and capricious exercise of his discretion, made upon unlawful procedure, in excess of his statutory authority, and in violation of unspecified constitutional and statutory provisions, all to the prejudice of Southside's unspecified statutory and constitutional rights, but including its right to procedural due process of law.

■ Our attention has not been invited to any statutory provision or regulation which governs applications for continuances in the administrative-agency setting. We believe that the statutes which require that hearings be held by the Commissioner, directed at whether to issue branch office applications, vest in him and his hearing officer the implied power to consider and determine requests for postponements of those hearings in the interest of fairness. Tex.Rev.Civ.Stat.Ann. art. 852a, §§ 2.07, 2.13; TAPTRA Section 13. *See also Gerst v. Jefferson County Savings & Loan Association*, 390 S.W.2d 318 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.). This power is analogous to the inherent power of a court to grant continuances in judicial proceedings. *See* Tex.R.Civ.P. 251, 252.

■ The issue of whether to grant the Motion for Continuance was a matter within the discretion of the hearing officer. *Carter-Wallace, Inc. v. Gardner*, 417 F.2d 1086 (4th Cir. 1968), *cert. denied*, 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271 (1969). We are left, therefore, with the inquiry of whether, as a matter of law, the hearing officer abused his discretion in light of all the circumstances.

---

1. Southside concedes that it had ample notice of the application by Lockhart for a branch office at the location in question, which application Southside chose not to contest because "Lockhart is on a periphery of Austin and Travis County already have [*sic*] branches in Austin, [and these factors] did not warrant us to file a protest." The application filed by Lockhart had been set for several months to be heard on October 30, 1979.

Southside determined to protest the application filed by Gibraltar, scheduled for hearing on the same date, because Gibraltar was the largest savings and loan institution in the state of Texas and this aspect of Gibraltar's size, in comparison to Lockhart's, was "going to cause undue harm, in all probability, to this branch new association [Southside]." There was no elaboration of what such harm consisted in, and no evidence to support it in any event.

The record reveals that the Motion for Continuance was presented to the hearing officer before commencement of the hearing on October 30, 1979. Counsel for Southside restated in substance, and without amplification, the grounds stated in its motion. He did so by way of legal argument only and his statements were as conclusionary and generalized as the motion itself. *No evidence was offered in support of the motion.* At the conclusion of counsel's remarks, the hearing officer asked counsel for Southside whether it had engaged an economist to testify in Southside's behalf, to which counsel replied by saying that they had had no opportunity to do so. The hearing officer then asked what preparation counsel had made for "trial" (the hearing on October 30, 1979), to which counsel replied by saying: "I have not had an opportunity to prepare any." The hearing officer then denied the Motion for Continuance and directed the proceedings to begin on the merits.

Lockhart and Gibraltar presented their respective cases throughout the day, at the end of which the hearing officer directed that the proceedings be adjourned until November 5, 1979. Southside did not pursue further its request for additional time.

The branch office applications were held under consideration until January 24, 1980, when the Commissioner entered his final order.[2] In pertinent part, that order provides as follows:

"There was no showing in the record that Protestant [Southside] had made any effort to retain the services of an economic expert (economic expert Dr. George W. Berry was retained by the other two Protestants and did appear and present evidence and testimony in opposition to the branch application). Moreover, Protestant did not file its motion for continuance until seven days after it received notice of the application and hearing and only four days before the hearing itself. Under the circumstances, the

Commissioner's Hearing Officer concluded and the Commissioner concludes that the motion for continuance should have been and was denied."

In our view, this part of the final order clearly indicates that the hearing officer denied the motion because Southside failed to demonstrate due diligence in two respects: (a) waiting seven days after receiving actual notice before filing its motion for continuance, and (b) making no effort to engage an economist. This part of the final order also indicates that any harm occasioned Southside by denying the continuance was insubstantial, in light of there being expert testimony offered by another protestant. *Cf.* Tex.R.Civ.P. 252.

 The hearing officer acted within his discretionary authority in this matter which involves the Commissioner's control of his own administrative docket. Having actual notice in excess of the ten days required as a minimum by TAPTRA § 13(a), it was presumed that Southside had reasonable notice of the hearing. Further, as the moving party, Southside had the burden of proceeding and the burden of persuasion, relative to its Motion for Continuance. The hearing officer could not make any presumption in favor of the motion. *Cf. Brown v. Abilene Nat'l Bank*, 70 Tex. 750, 8 S.W. 599 (1888). He could reasonably require that Southside make a "showing" of such things as the specific details of how it had exercised due diligence in the circumstances and specific details supporting its generalized claims of lack of time to prepare, threatened injury, inability to obtain the services of an expert witness, how Gibraltar's application constituted an additional threat compared to Lockhart's application, and so forth. *Cf.* Tex.R.Civ.P. 252. As indicated by the record, Southside chose not to offer *any* supporting evidence but instead its counsel merely restated the substance of its motion in the same general language and argument.

**2.** There is no indication in the record that Southside sought to reopen the evidence during this period or that it otherwise sought to bring

before the Commissioner the expert witness testimony or any other evidence it may have desired.

Southside was, without question, entitled as a matter of statutory right and constitutional due process of law, an *opportunity to show* that in the particular circumstances it required additional time in the interest of fairness. The preliminary hearing was convened *for the very purpose* of affording Southside such an opportunity. Southside simply failed to support with proof its request for continuance. Due process of law is not denied when the complaining party fails to support its claim in a hearing held for that purpose. *N.L.R.B. v. Newberry Lumber & Chemical Co.*, 123 F.2d 831 (6th Cir. 1941). Appellees were involved in a contested case before the agency, which required an "adjudicative hearing" under the "rules of evidence as applied in nonjury civil cases in the district courts of this state...." TAPTRA §§ 3(2), 14. An offer of *proof* was required of appellees. *Texas State Board of Registration for Professional Engineers v. Dalton, Hinds & O'Brien Eng. Co.*, 382 S.W.2d 130 (Tex.Civ. App.—Corpus Christi 1964, no writ).

In reply to appellant's contention that Southside failed to support its request for continuance by an offer of proof, Southside states repeatedly in its brief that the hearing officer and the Commissioner "knew" all of the details necessary to constitute sufficient cause for granting the motion. By this, we understand the contention to be that the hearing officer knew from his own experience or perhaps from agency practice and records the details sufficient to constitute grounds for a continuance—the importance and customary employment of expert witnesses; that "public need, volume of business in the community and undue harm, involved sophisticated evidence calling for expert analysis and expertise"; "that as a newly chartered association only Southside Savings was confined to but one office location whereas the other Protestants had numerous branch officers"; "that Gibraltar Savings' branch office application would affect Southside Savings differently than the other parties because of its recent creation"; and so forth, all as alleged in Southside's brief in this Court but in none of the lower tribunals. These

things may or may not be so, but the point is that it was appellees' burden to support their motion with proof, and they failed to do so. Motions for continuance are to be determined upon facts in evidence and not upon the hearing officer's mental impressions or facts outside the record. *Brown v. Abilene Nat'l Bank, supra; Alderete v. Mosley*, 200 S.W. 261 (Tex.Civ.App.—El Paso 1918, no writ).

There was not, so far as the record indicates, any request that the hearing officer take judicial or official notice of any matter pertaining to the continuance requested by Southside or to any matter pertaining to the reasonableness of the notice received by Southside. TAPTRA § 14(q).

In light of the record, we cannot say that the hearing officer abused his discretion in denying the Motion for Continuance or the Plea in Abatement.

By cross-points, appellees complain that the trial court erred in affirming the Commissioner's decision to postpone until June 1, 1980, the date on which the successful applicant, Gibraltar, could open its branch office. They say:

> "Until the time the Commissioner announced his decisions there was no notice, on the record or off the record, that the issue of a delayed opening of this branch office was under consideration by the Commissioner."

The Commissioner made his order, in this respect, without attendant findings of fact and conclusions of law. The final order reflects that this portion of his order was made as an accommodation for Southside, a newly-chartered institution which had not commenced business at the time of the order. It was within the discretion of the Commissioner to make such an order. Appellees were not prejudiced thereby and we accordingly find no reversible error in the Commissioner's action.

We, therefore, reverse the judgment of the trial court and render judgment sustaining the final order of the Commissioner dated January 24, 1980.

PHILLIPS, Chief Justice, dissenting.

I respectfully dissent.

In my judgment 11 days is not enough time to prepare an administrative case of this magnitude. Consequently, I would hold that appellees have been denied procedural due process in the matter and would affirm the trial court.

As to the question of whether or not testimony from appellee, Southside's attorney that he had not yet found an economist to bulwark his position and as to the relevance of this testimony to establish the facts necessary for a postponement, I cannot imagine a better expert to present evidence on the situation than the lawyer involved.