PUBLIC UTILITY COMMISSION OF
TEXAS and The City of McKinney,
Texas, Appellants,

v.

SOUTHWESTERN BELL TELEPHONE
COMPANY, Appellee.

No. 03–96–00717–CV.

Court of Appeals of Texas,
Austin.

Sept. 11, 1997.

Opinion Overruling Rehearing
Dec. 18, 1997.

Myra A. McDaniel, Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P., Austin, for The City of McKinney, Texas.

Dan Morales, Attorney General, Amanda Atkinson Cagle, Assistant Attorney General, Natural Resources Division, Austin, for Public Utility Commission of Texas.

Michael Diehl, Graves, Dougherty, Hearon & Moody, Austin, for Southwestern Bell Telephone Co.

Before POWERS, JONES and KIDD JJ.

POWERS, Justice.

In an action brought by Southwestern Bell Telephone Company, the district court (1) reversed a final order issued by the Public Utility Commission in a contested case and (2) dismissed the cause for want of subject-matter jurisdiction. The Commission and the City of McKinney (intervenor in the suit below) appeal. We will reverse the district-court judgment and remand the cause to that court.

## THE CONTROVERSY

The Commission's general counsel initiated a contested-case proceeding under Commission Docket 8585 to investigate SWBT's rates and services and to establish new rates if necessary.[1] *See* Public Utility Regulatory Act (PURA), Tex.Rev.Civ. Stat. Ann. art.

---

1. The Commission consolidated the contested case in Docket 8585 with another in Docket 8218. They proceeded to adjudication under the heading *Inquiry of the General Counsel into the Reasonableness of the Rates and Services of* *Southwestern Bell Telephone Company and Inquiry of the General Counsel into the WATS Prorate Credit. See* 18 P.U.C. Bull. 1468 February 20, 1990.

1446c, § 42 (West 1980).[2] The City of McKinney and several other municipalities intervened. In a preliminary hearing, the parties agreed as follows: (1) SWBT would not seek to include in its operating expenses, for ratemaking purposes, the sums it paid the cities as reimbursement for their attorneys' fees; (2) the cities would submit to SWBT sworn statements setting forth the amount of their attorneys' fees; (3) SWBT would pay the submitted amounts but if a problem arose in that regard SWBT would attempt to "work it out" with the city; and (4) if the problem could not be "worked out," SWBT would ask the hearing examiner "for whatever ruling might be appropriate."[3] The examiner asked whether the agreement would result in payment of the cities' expenses before rendition of a final order in Docket 8585. SWBT's counsel replied that he assumed the cities would want their expenses determined as soon as possible, but the determination "could happen, I suppose, at any time." The examiner implicitly approved the agreement by excluding the reimbursement issue from adjudication in Docket 8585.

At the conclusion of Docket 8585, the City of McKinney submitted to SWBT its claim for reimbursement of attorneys' fees incurred in that Commission proceeding. SWBT paid the claim without objection. The City sued in district court for judicial review of the Commission's final order in Docket 8585. The course of that litigation is set out in *Cities of Abilene v. Public Util. Comm'n,* 854 S.W.2d 932 (Tex.App.—Austin), *aff'd in part, rev'd in part,* 909 S.W.2d 493 (Tex. 1995). The City of McKinney submitted to SWBT a claim for reimbursement for attorneys' fees resulting from the lawsuit. SWBT refused to pay the claim based on its understanding that the parties' agreement in Docket 8585 extended only to attorneys' fees incurred in the agency proceeding—expenses that SWBT had previously reimbursed the City—and not to attorney's fees incurred in a suit for judicial review of the agency order in Docket 8585.

Having a contrary understanding of the parties' agreement, the City complained to the Commission. In a contested case conducted in Docket 11027, the Commission issued a final order in which it found as a fact that the parties had made the agreement on the terms set out above. In related conclusions of law, the Commission determined as follows: (1) a proceeding initiated by the Commission's general counsel under PURA section 42 is a "ratemaking proceeding" within the meaning of PURA section 24, entitling municipalities to attorneys' fees under that section; (2) the City of McKinney's complaint in docket 11027, seeking reimbursement of attorneys' fees based on the parties' agreement in Docket 8585, is a dispute so closely related to a "ratemaking proceeding" that the City is also entitled to recover under PURA section 24 the City's attorneys' fees incurred in Docket 11027; (3) $125,686.14 and $57,860.36 were reasonable amounts for

**2.** PURA was recodified effective April 5, 1995, as Tex.Rev.Civ. Stat. Ann. art. 1446c–0 (West 1996). The contested case in Docket 8585 was conducted and decided before the recodification. As discussed in the text, the controversy involves a subsequent contested case denominated Docket 11027 in the Commission. That contested case was conducted under the former version of PURA; the final order therein was signed, however, after the April 5, 1995 effective date of the recodification. The substance of the PURA sections discussed in the text of our opinion was not altered by the 1995 recodification. For clarity, we have designated the section numbers as they appeared in PURA before its recodification.

**3.** PURA section 24 provides as follows:

The governing body of any municipality shall have the right to select and engage rate consultants, accountants, auditors, attorneys, engineers, or any combination thereof, to conduct investigations, present evidence, advise and represent the governing body, and assist with litigation *on public utility ratemaking proceedings;* and the public utility engaged in such proceedings *shall be required to reimburse the governing body* for the reasonable cost of such services.

PURA § 24 (emphasis added). The parties may have made the reimbursement agreement based upon a shared belief or assumption that Docket 8585 amounted to a "public utility ratemaking proceeding" to which PURA section 24 applied; or, the parties may have been in dispute in that regard but wished nevertheless to adjust the dispute on the terms indicated so as to avoid having to litigate the issue to the point of a Commission interpretation of PURA sections 24 and 42 and a resulting agency decision. We believe the parties' motivation immaterial; the fact of the reimbursement agreement is undisputed.

attorneys' fees in Docket 8585 and Docket 11027, respectively; and (4) SWBT is ordered to reimburse the City of McKinney, within thirty days, the aggregate amount of $183,546.50.[4]

SWBT sued in the present case for judicial review of the Commission's final order in Docket 11027, contending among other things that the order was void because the Commission lacked jurisdiction to hear and decide the City of McKinney's complaint. The district court reversed the Commission order in Docket 11027, based on the agency's want of subject-matter jurisdiction, and ordered the cause dismissed.

In two points of error, the Commission contends the judgment is erroneous because, as a matter of law, the Commission possessed subject-matter jurisdiction to adjudicate the City of McKinney's complaint in Docket 11027. The City of McKinney makes the same contention in four of its five points of error. Because we conclude the Commission possessed such jurisdiction, we will sustain the points of error and need not discuss the City's fifth point of error.

### DISCUSSION AND HOLDINGS

■ The legislature delegated to the Commission a general regulatory power over public utilities expressed in the broadest possible terms. The delegation includes the power "to do all things, whether specifically designated in [PURA] or implied herein, necessary and convenient to the exercise of [the Commission's] power and jurisdiction." PURA § 16. The delegated power also includes an express power to conduct adjudicative proceedings "with respect to administering the provisions of [PURA] or the rules, orders, *or other actions* of the commission." *Id.* (emphasis added). A delegation of power to an administrative agency, in such broad and general terms, implies a legislative judgment that the agency should have the widest discretion in conducting its adjudicative proceedings, including a discretion to make ad hoc rulings in specific instances, within the bounds of relevant statutes and the fundamentals of fair play. *See FCC v. Schreiber,* 381 U.S. 279, 289–91, 85 S.Ct. 1459, 1467–68, 14 L.Ed.2d 383 (1965); *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 137–40, 60 S.Ct. 437, 438–40, 84 L.Ed. 656 (1940). Within those limits and without express statutory authority, it has been held that an agency's power to conduct adjudicative proceedings necessarily includes an attendant power to consolidate proceedings, allow intervention by strangers to the litigation, and grant continuances. *See, e.g., Alamo Express v. Union City Transfer,* 158 Tex. 234, 309 S.W.2d 815, 821 (1958); *State v. Gutschke,* 149 Tex. 292, 233 S.W.2d 446, 447–48 (1950); *Gibraltar Sav. Ass'n v. Franklin Sav. Assn.,* 617 S.W.2d 322, 326 (Tex.Civ. App.—Austin 1981, writ ref'd n.r.e.); *see generally,* 3 *Sutherland Statutory Construction* § 65.04 (5th ed. 1992) ("The procedural methods that are implied for administrative action that is judicial in nature tend to follow the model of court procedures."). An agency must have the flexibility necessary to adjust to the variety of incidents encountered in particular contested cases.

■ We hold the power to conduct adjudicative proceedings, expressly delegated to the Commission in PURA section 16, necessarily includes the following incidental powers: (1) a power to accept and act upon an agreement between the parties that removes from dispute and litigation a subsidiary issue of fact or law,[5] such as the parties' agreement pertaining to attorneys' fees in this instance; (2) a power to interpret the agreement when a dispute arises subsequently in that regard; and (3) a power to formulate

---

4. No question pertaining to how the order may be enforced, whether by process or otherwise, is before us on appeal. *See, e.g., Booth v. Texas Employers' Ins. Ass'n,* 132 Tex. 237, 123 S.W.2d 322, 326 (1938); *see generally,* Schwartz, *Administrative Law* § 915, 551–53 (2d ed.1984); Jaffe, *Judicial Control of Administrative Action,* ch. 8, 261–319 (1965). Similarly, SWBT has not challenged the order in any respect by cross-point. We decide only that the Commission's final order in Docket 11027 was not void for want of subject-matter jurisdiction.

5. In a contested case governed by the Administrative Procedure Act, the agency may, unless precluded by law, dispose of the *entire* case by stipulation, agreed settlement, consent order, or default. *See* Tex. Gov't Code Ann. § 2001.056 (West 1997).

and award a reasonable remedy necessary to effectuate the agreement. *See Corzelius v. Railroad Commission,* 182 S.W.2d 412, 417 (Tex.Civ.App.—Austin 1944, no writ) (conservation statutes administered by agency implicitly authorize agency to fashion and apply "practical and reasonable" remedies, in addition to statutory remedies, where necessary to effectuate conservation statutes).

■ SWBT reasons the Commission was powerless to award attorneys' fees in Docket 11027 because: (1) PURA section 24 authorizes recovery of attorneys' fees only in a "ratemaking proceeding," in this instance Docket 8585; (2) the City of McKinney was therefore required to plead, prove, and recover the entirety of its attorneys' fee expenses in Docket 8585; (3) the Commission lost jurisdiction to award attorneys fees in Docket 8585 when its order in that contested case became final; and (4) no statute empowers the Commission to re-open and decide anew matters adjudicated in a previous contested case. In support of this reasoning, SWBT cites several judicial decisions to the effect that one entitled to statutory attorneys' fees must recover accrued and expected attorneys' fees in the same proceeding, our decision in *Sexton v. Mount Olivet Cemetery Assn.,* 720 S.W.2d 129 (Tex.App.—Austin 1986, writ ref'd n.r.e.) (administrative agencies are powerless to re-open adjudicative proceedings absent statutory authority), and the supreme court decision in *Coalition of Cities for Affordable Util. Rates v. Public Util. Comm'n,* 798 S.W.2d 560, 565 (Tex. 1990), *cert. denied,* 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) (common law doctrines of res judicata and collateral estoppel bar relitigating before Public Utility Commission prudence of utility's expenditures for nuclear power plant and resulting rate base). Our holdings do no violence to those decisions.

The question of the City of McKinney's entitlement to attorneys' fees was *never* adjudicated in Docket 8585. Instead, that question was by agreement *removed* from the course of litigation in that proceeding. In lieu of whatever rights and obligations resulted from the force and effect of PURA section 24, the parties substituted the rights and obligations comprising their agreement relative to attorneys' fees. The Commission accepted and acted upon that agreement in arriving at SWBT's rates in Docket 8585. Thus, when the Commission entertained the City of McKinney's complaint in Docket 11027, it could not possibly have "re-opened" for "relitigation" and a new adjudication the question of attorneys' fees—that question had never been adjudicated at all. SWBT's argument to the contrary reduces actually to a contention that the Commission and the parties were powerless to remove the question of attorneys' fees from litigation and adjudication in Docket 8585. We have held to the contrary for the reasons given above. The holding in *Coalition of Cities* is not to the contrary. There the court held the Commission was powerless to "carve" from a ratemaking proceeding the question of whether part of a utility's capital expenditures were prudent when the utility insisted the expenditures be *included* in the calculation of its rates. *Coalition of Cities,* 798 S.W.2d at 565. In contrast, SWBT's agreement in Docket 8585 included a stipulation that the sums it paid as reimbursement for the cities' attorneys' fees would be *excluded* in the calculation of its rates. The "carving" in the present case could have no effect upon the ratemaking process; the opposite was true in *Coalition of Cities.*[6]

■ SWBT contends the Commission lacked subject-matter jurisdiction because no statute apart from PURA section 24 empowers the agency to order reimbursement for attorneys' fees; and that statute, properly construed, applies only to ratemaking proceedings initiated by a utility under PURA section 43. Consequently, PURA section 24 did not apply in Docket 8585, a proceeding initiated by the agency's general counsel un-

---

6. The supreme court, in *Coalition of Cities,* based its holding on a conclusion that nothing in PURA authorized the Commission to determine one item of a utility's rate base (the prudence of expenditures incurred in constructing a particular plant) in a proceeding separate from that in which all other items of the rate base were litigated. *Coalition of Cities,* 798 S.W.2d at 565. The supreme court later described this interpretation of PURA as the very *holding* of the decision. *See Gulf States Utils. Co. v. Public Util. Comm'n,* 947 S.W.2d 887 (1997).

der PURA section 42. We need not decide whether SWBT's interpretation of PURA section 24 is correct. The legal effect of the parties' agreement was to substitute the rights and obligations of their agreement for any rights and obligations imposed by PURA section 24 relative to attorneys' fees. We are aware, of course, that the Commission order does not rest explicitly upon that theory. Instead, the Commission order construed PURA section 24 as being applicable in both Docket 8585 and 11027 and awarded the City of McKinney attorneys' fees based on the force and effect of that statute, not the force and effect of the parties' agreement. Nevertheless, the order also found as a fact that the parties had agreed in Docket 8585 on the terms we have described above. That agreement is a sufficient legal basis for the final order in Docket 11027 and we are obligated to sustain the agency order on any legal basis shown in the record *See Texas Railroad Comm'n v. Austin*, 524 S.W.2d 262, 279 (Tex.1975); *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939).[7]

For the reasons given, we reverse the district-court judgment and remand the cause to that court for proceedings not inconsistent with our opinion.

### ON MOTION FOR REHEARING

POWERS, Justice.

The district-court judgment dismissing the City of McKinney's cause of action rests upon a single theory—that the Commission was without subject-matter jurisdiction in Docket 11027; consequently the district court lacked such jurisdiction.[1] We decide, to the contrary, that the Commission possessed authority to hear and determine the dispute decided in Docket 11027. We decide no other issue. We should, in that connection, refer to several matters raised by SWBT in its motion for rehearing.

 We do not, as SWBT suggests, conclude that SWBT agreed to pay the City of McKinney's "appellate" attorneys' fees. The Commission made that decision. We cannot and have not. Nor do we examine the correctness of the Commission decision. We decide simply that the Commission had jurisdiction to make *a* decision resolving the dispute. We believe the power was delegated to the Commission in PURA section 16 as a power incidental and necessary to the agency's exercise of its expressly delegated power and duty to adjudicate contested cases. We believe the power was also delegated to the Commission in Texas Government Code section 2001.056, authorizing agencies subject to the statute to dispose of an entire contested case by agreed settlement or stipulation; *a fortiori* they are authorized to dispose in like manner of a subsidiary issue of fact or law within a particular case, such as the disputed issue of attorneys' fees in this instance.[2] We conclude the foregoing authority extends even to agreed settlements and stipulations made in rate cases; the relevant statutes do not distinguish rate cases from any other kind of contested case. And if disputes arise from such agreements and stipulations, after a final order has been issued in the contested case in which they were made, we believe the Commission may,

7. This principle is sometimes confused with the erroneous idea that a reviewing court must sustain an agency order on *any* "valid basis" shown in the record. This does *not* mean, however, that the reviewing court may sustain the agency upon a *factual* basis not passed upon by the agency. It means that the reviewing court may sustain the agency order upon any *legal* basis shown in the record. The supreme court explained the distinction at length in *Gulf Land Co.*, 131 S.W.2d at 84.

1. The district-court judgment states as follows:

 It is the decision of this Court that the Commission has jurisdiction over expenses in a rate case so long as that case is pending, but when the [rate] case becomes final the jurisdiction over the matter of fees in that case ceases, just as the jurisdiction of the Commission ceases over any other matter pending before the Commission in that case.

2. It is difficult to imagine how an agency might conduct to a conclusion a complex contested case, such as a rate case, without any stipulations or agreed settlement as to some subsidiary issue of fact or law. And the agency's power to accept and act upon such stipulations or agreed settlement is meaningless, as a practical matter, if the agency is powerless to enforce them in some manner. The best discussion of the topic is found in 4 Stein, Mitchell and Mezines, *Administrative Law* § 23.01 (1991).

depending on the nature of the dispute, decide the dispute as a regulatory matter under the cited statutes and under the agency's general power "to insure compliance with the obligations of public utilities." PURA § 37. This necessarily includes a power to decide what those obligations are in particular circumstances. We believe the present dispute comes within the Commission's power. As stated previously, however, there is before us at the present time no issue of how the Commission may enforce its decision if it is held ultimately to be free of error.[3]

We need not decide in this appeal the meaning and applicability of PURA sections 24 and 70.[4] The parties' dispute as to the City of McKinney's claim for attorneys' fees in Docket 8585 undoubtedly arose from their different views as to the correct meaning of those statutes. As noted previously, however, the litigants in Docket 8585 may well have removed the dispute from Commission adjudication in that contested case because they wished to substitute the rights and obligations of their agreed settlement for any inferrable from PURA sections 24 and 70, avoiding thereby, for purposes of Docket 8585 at least, the Commission's authoritative decision construing the two statutes. In all events, the agreed settlement rendered irrelevant sections 24 and 70 *insofar as the question of subject-matter jurisdiction is concerned.*

In Docket 11027 the Commission expressly decided the question of subject-matter jurisdiction based upon the agency's interpretation of PURA sections 24 and 42. Insofar as subject-matter jurisdiction is concerned, we sustain the Commission's final order in Docket 11027 on a different basis—the authority delegated to the agency in PURA section 16 and Texas Government Code section 2001.056. Because the Commission possessed subject-matter jurisdiction under those statutes, it is immaterial if the agency misconstrued PURA sections 24 and 42 as SWBT contends. SWBT complains, however, that we erroneously uphold the Commission's final order on a basis other than that relied upon by the agency. As explained previously in our opinion, we must sustain the agency order on any *legal* basis shown in the record. The legal basis, in this instance, is PURA section 16 and Texas Government Code section 2001.056. We have not decided the question of subject-matter jurisdiction on any disputed *factual* basis not passed upon by the Commission.

SWBT suggests we erroneously conclude an administrative agency may adjudicate private contract rights. We recognize the long-standing doctrine reflected in such cases as *Railroad Commission v. City of Austin,* 524 S.W.2d 262, 281 (Tex.1975). The agency record in the present case reveals, however, that the attorneys' fee agreement was more than a private agreement. It affected directly the public interest. The Commission's acceptance of the agreement, as a basis for excluding the issue of attorneys' fees from adjudication in Docket 8585, was necessary to give the agreement the *administrative* effect requested by the litigants. Based upon the Commission's acceptance of the agreement, the agency formulated and issued a final order in Docket 8585 *fixing public utility rates.* We have held PURA section 16 and Texas Government Code section 2001.056 vested authority in the Commission to take this administrative action. These statutes also placed in the Commission a power to decide as a *regulatory* matter the dispute that arose subsequently regarding the agreement, and to award an *administrative reme-*

---

**3.** *See* PURA § 71 (attorney general, on Commission's request, shall bring a claim in court of competent jurisdiction to require public utility's compliance with agency order).

**4.** PURA section 24 requires a public utility to reimburse a municipality "for the reasonable costs of" its attorneys' fees "to the extent found reasonable by the commission." This implies, of course, that the Commission possesses at minimum the power to determine what is in fact a reasonable amount and the utility's obligation does not depend upon the municipality being a prevailing party in the "ratemaking proceedings before the commission or in court." PURA section 70, on the other hand, authorizes recovery of attorneys' fees by any party (a municipality or another) who *prevails in a suit for judicial review* on his claim that existing rates or those prescribed by the Commission are excessive. The prevailing party may, "in the same action," recover reasonable attorneys' fees for services furnished "before the commission and the court," in an amount "fixed by the [reviewing] court."

*dy* to rectify any *administrative wrong* and any resulting *administrative* consequences. We are not called upon now to decide the reasonableness of the Commission's chosen remedy or the lawfulness or sufficiency of the legal and factual conclusions stated by the agency in support of its order requiring SWBT to pay the City of McKinney $183,-546.50. Nor do we decide how such an order may be enforced if it is ultimately sustained. *See* PURA § 71. These issues are for the district court to decide in the first instance. The district court could not reach them because it held, erroneously in our view, that the Commission lacked subject-matter jurisdiction.

SWBT suggests we erroneously conclude private parties may, by their agreement, confer subject-matter jurisdiction upon an administrative agency. It is a sufficient response to note that we have discussed at length the *statutory* grounds for our conclusion regarding subject-matter jurisdiction. The parties' agreement and any dispute arising therefrom are proper objects but not the source of the Commission's jurisdiction.

We overrule the motion for rehearing.