**Opinion issued December 20, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-11-00885-CV

————————————————

**CITY OF HOUSTON, Appellant**

**V.**

**CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-29666**

---

## MEMORANDUM OPINION

The City of Houston appeals the trial court's judgment dismissing, without prejudice, the City's claims against CenterPoint Energy Houston Electric, LLC. In two issues, the City contends that the trial court erred by granting CenterPoint's plea to the jurisdiction.

We affirm.

## Background

CenterPoint is a regulated utility in the business of transmitting and distributing electricity. One of its retail customers is the City of Houston. In addition to providing electricity, CenterPoint provides the City with street lights, which CenterPoint owns and maintains.

Governing the terms and conditions of the street light services provided by CenterPoint to the City is a document entitled "CenterPoint Tariff for Retail Delivery Services" ("the Tariff").

The rates CenterPoint may charge the City for the street lights are contained in the Tariff. Unlike electricity usage, street light usage is not metered. The City does not pay for the actual amount of light it receives each month from the street lights supplied by CenterPoint. Instead, street light usage is billed according to the number and type of street light and the wattage a particular type of street light has been determined to deliver. The Tariff contains a schedule defining the amount CenterPoint may charge for each type of light. The City relies on CenterPoint to keep track of the number and the type of street lights in service. The Tariff also requires CenterPoint to "install, own, and maintain" the street lights according to the National Electric Safety Code. The Tariff was filed with, and approved by, the Texas Public Utilities Commission.

The City sued CenterPoint for breach of contract. The City alleged that CenterPoint had overcharged it for street light services. The City asserted that the overcharges resulted from CenterPoint's noncompliance with the Tariff in two ways. According to the City, CenterPoint had billed it for more street lights than were actually in service. The City also averred that CenterPoint had failed to perform required maintenance on the lights, such as replacing light bulbs and trimming the trees around the lights. The City alleged that CenterPoint's failure to maintain the lights resulted in reduced illumination for some of the lights for which the City was billed.

The City sought damages for the amount that it had been overcharged by CenterPoint. It also sought to recover its attorney's fees under Civil Practice and Remedies Code section 38.001

CenterPoint filed a plea to the jurisdiction, asserting that the trial court lacked subject-matter jurisdiction over the case. CenterPoint argued that the legislature, in the Public Utility Regulatory Act, established a regulatory scheme bestowing exclusive jurisdiction on the Texas Public Utilities Commission ("PUC") for rate dispute and overcharge claims.

The City responded that this was not a matter over which the administrative agency had exclusive jurisdiction because it was not a regulatory dispute. The City pointed out that it did not challenge the adequacy of the governing regulations, the

3

sufficiency of the services CenterPoint agreed to provide, or the reasonableness of the applicable rates. Instead, it was complaining about CenterPoint's failure to meet the "standards and regulations to which it agreed." The City characterized its claims as "a simple contract dispute between a retail customer and a utility."

The trial court granted CenterPoint's plea to the jurisdiction and dismissed the City's claims without prejudice. This appeal followed.

## Plea to the Jurisdiction

In two issues, the City argues that the trial court erred in granting CenterPoint's plea to the jurisdiction.[1]

## A.    Standard of Review

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. *Id.* at 446. The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

---

[1]    In its first issue, the City contends that the trial court erred in dismissing its breach of contract claim based on its allegation that CenterPoint has charged it for more lights than it supplied. CenterPoint asserts in its second issue that the trial court erred in dismissing its breach of contract claim arising from its allegation that CenterPoint failed to properly maintain the street lights.

Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. *See Mayhew v. Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). When conducting a de novo review, the appellate court exercises its own judgment and re-determines each legal issue, giving no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

In deciding a plea to the jurisdiction, a court may not weigh the claims' merits, but must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The court of appeals must take the allegations in the petition as true and construe them in favor of the pleader. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

In this case, CenterPoint asserts that the regulatory agency—either the governing body of the City of Houston, as the municipality in which the street light service is provided, or the PUC—has exclusive original jurisdiction over the City's breach of contract claims. The Supreme Court of Texas has determined that "[a]n agency has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute." *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004) (orig. proceeding) (citing *Subaru of Am. Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) and *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex. 2000)). "An agency has exclusive

5

jurisdiction 'when a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'" *Subaru of Am.*, 84 S.W.3d at 222 (quoting Humphrey, Comment, *Antitrust Jurisdiction and Remedies in an Electric Utility Price Squeeze*, 52 U. CHI. L. REV. 1090, 1107 n.73 (1985)).

If an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking review of the agency's action, and, until the party has done so, the trial court lacks subject-matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction. *In re Entergy Corp.*, 142 S.W.3d at 321–22. Whether an agency has exclusive jurisdiction is a question of law we review de novo. *See id.* at 322; *David McDavid Nissan*, 84 S.W.3d at 222.

## B.   Analysis

The Supreme Court of Texas has recognized that the Legislature enacted the Public Utility Regulatory Act ("PURA") "to establish a comprehensive and adequate regulatory system for electric utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the electric utilities." *In re Entergy Corp.*, 142 S.W.3d at 323 (quoting TEX. UTIL. CODE ANN. § 31.001(a) (Vernon 2007)). "Electric utilities are by definition monopolies in many of the services and areas they serve. . . . Public agencies regulate electric

6

utility rates, operations, and services, except as otherwise provided by [PURA]."

TEX. UTIL. CODE ANN. § 31.001(b).

> With respect to the PUC's jurisdiction, PURA section 32.001 provides:
>
> (a) Except as provided by Section 32.002, the commission has exclusive original jurisdiction over the rates, operations, and services of an electric utility in:
>
>> (1) areas outside a municipality; and
>>
>> (2) areas inside a municipality that surrenders its jurisdiction to the commission under Section 33.002.
>
> (b) The commission has exclusive appellate jurisdiction to review an order or ordinance of a municipality exercising exclusive original jurisdiction under this subtitle.[2]

Id. § 32.001 (Vernon 2007).

> PURA section 32.002 states, in relevant part:
>
> Except as otherwise provided by this title, this subtitle does not authorize the commission to . . . affect the jurisdiction, power, or duty of a municipality exercising exclusive original jurisdiction in that municipality's regulation and supervision of an electric utility in the municipality.

Id. § 32.002(2) (Vernon 2007).

---

[2] A party is entitled to judicial review of a final order of the PUC. See TEX. UTIL. CODE ANN. § 15.001 (Vernon 2007); TEX. GOV'T CODE ANN. §§ 2001.171, .176 (Vernon 2008).

Regarding the jurisdiction of a municipality, PURA section 33.001(a)

provides:

> To provide fair, just, and reasonable rates and adequate and efficient
> services, the governing body of a municipality has exclusive original
> jurisdiction over the rates, operations, and services of an electric
> utility in areas in the municipality, subject to the limitations imposed
> by this title.

*Id.* § 33.001(a) (Vernon 2007).

PURA defines "a "rate" to include

> a compensation, tariff, charge, fare, toll, rental, or classification that is
> directly or indirectly demanded, observed, charged, or collected by an
> electric utility for a service, product, or commodity described in the
> definition of electric utility in this section and a rule, practice, or
> contract affecting the compensation, tariff, charge, fare, toll, rental, or
> classification that must be approved by a regulatory authority.[3]

*Id.* § 31.002(15) (Vernon Supp. 2012).

PURA further specifies that "service"

> has its broadest and most inclusive meaning.  The term includes any
> act performed, anything supplied, and any facilities used or supplied
> by a public utility in the performance of the utility's duties under this
> title to its patrons, employees, other public utilities, an electric
> cooperative, and the public . . . .[4]

*Id.* § 11.003(19) (Vernon 2007).

---

[3]     It is not in dispute that CenterPoint is an "electric utility."  *See* TEX. UTIL. CODE
ANN. § 31.002(6) (Vernon 2007).

[4]     A "public utility" includes an "electric utility," such as CenterPoint.  *See id.*
§ 11.004 (Vernon Supp. 2012).

The Supreme Court of Texas has explained that "the statutory description of PURA as 'comprehensive' demonstrates the Legislature's belief that PURA would comprehend all or virtually all pertinent considerations involving electric utilities operating in Texas." *In re Entergy Corp.*, 142 S.W.3d at 323. The court continued,

> [W]here the Legislature clearly expresses its intent through statutory language, our exclusive jurisdiction inquiry is uncomplicated. Here, the Legislature's language demonstrates that it intended PURA to be the exclusive means of regulating electric utilities in Texas. The Legislature's description of PURA as "comprehensive," coupled with the fact that PURA regulates even the particulars of a utility's operations and accounting, demonstrates the statute's pervasiveness.

*Id.*

PURA sections 32.001 and 33.001 expressly grant "exclusive original jurisdiction" over the *rates* and *services* of an electric utility to the governing body of the municipality or to the Public Utilities Commission, if a municipality's jurisdiction is not implicated. *See* TEX. UTIL. CODE ANN. §§ 32.001, 33.001. The instant breach of contract action involves the City's claim that CenterPoint has violated the terms of the Tariff by not providing services it agreed to provide and by charging it for street light services it did not receive. The dispute centers on the City's claims that the CenterPoint has collected money from it for nonexistent street lights and has failed to maintain the lights, resulting in the City receiving less illumination than for which it has paid.

9

The Legislature has defined a "rate" to include a charge that is directly or indirectly demanded or collected by an electric utility for a service or product and to include "a rule, practice, or contract affecting the compensation, tariff, charge, fare, toll, rental, or classification that must be approved by a regulatory authority." *See* TEX. UTIL. CODE ANN. § 31.002(15). The Legislature gives the term "service" "its broadest and most inclusive meaning" to include "anything supplied . . . to [a public utility's] patrons." *Id.* § 11.003(19). Applying these definitions, the City's breach of contract claims—whether based on billing for nonexistent street lights or failing to maintain the lights—fall under the statutory definitions of "rate" or "service." *See id.* §§ 31.002(15), 11.003(19).

Under the clear and express terms of PURA, the applicable regulatory authority—whether it is, as discussed *infra*, the governing body of the municipality or the PUC—has exclusive original jurisdiction over the dispute. *See id.* §§ 32.001, 33.001; *see also In re Entergy Corp.*, 142 S.W.3d at 323–24 (analyzing PURA and concluding that Legislature expressed clear intention that Public Utility Commission have exclusive jurisdiction over dispute between Entergy and ratepayers). Accordingly, the City was required to exhaust all administrative remedies before seeking review of the agency's action in the district court. *See In re Entergy Corp.*, 142 S.W.3d at 321–22. It is undisputed that the City has not filed its claims with an administrative agency. Hence, the trial court lacks subject-

10

matter jurisdiction, and it properly dismissed the City's claims without prejudice. *See id*. at 321–22.

This conclusion is not only required by PURA's plain language but also supported by our decision in *Tara Partners v. CenterPoint Energy Resources Corp.*, 371 S.W.3d 441, 447 (Tex. App.—Houston [1st Dist.] 2012, no pet.). There, Tara Partners sued CenterPoint Energy, a gas utility, in district court for breach of contract, alleging that it had been billed for more gas than it had used. *See id.* at 443. Interpreting language essentially identical to that of PURA, we determined that, under the Gas Utility Regulatory Act ("GURA"), either the Texas Railroad Commission or the municipality had exclusive original jurisdiction over the billing dispute. *Id.* at 446–47. We concluded that the billing dispute fell within the GURA's definitions of "rate" and "service," definitions which correspond to those found in PURA. *See id.* at 446.

In its reply brief, the City acknowledges that *Tara Partners* is "virtually indistinguishable" from the instant case. Nonetheless, the City argues that *Tara Partners* is not controlling because, there, we did not distinguish between "adjudicative" and "regulatory" jurisdiction. The City asserts that the "exclusive original jurisdiction" referenced in PURA sections 32.001 and 33.001 pertains to regulatory jurisdiction, not adjudicatory jurisdiction. The City contends that a billing dispute, such as the one here or in *Tara Partners*, is adjudicatory in nature,

not regulatory in nature. The City writes in its brief, "*Tara Partners* did not even consider the possibility that the exclusive jurisdiction granted to regulatory authorities over 'rates, operations, and services' is confined to regulatory jurisdiction and does not include adjudicatory jurisdiction."

CenterPoint asserts, and the City acknowledges, that no Texas statutory or case authority defines, or makes a distinction between, regulatory and adjudicatory jurisdiction. Instead, the Supreme Court of Texas instructs us that an agency has exclusive jurisdiction when it was the Legislature's intention to give the agency exclusive jurisdiction. *See In re Entergy*, 142 S.W.3d at 322. A pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed. *Id.* It is PURA's language that is determinative of whether the Legislature created a pervasive regulatory scheme that it intended to be the exclusive means by which claims, such as those here, are addressed. *See id.* We determine the Legislature's intention by looking to the plain and common meaning of the statute's words. *Id.*

As mentioned, PURA's language reveals that it is comprehensive and pervasive, regulating numerous aspects of an electric utility's operation. *See id.* "[T]he Legislature's language demonstrates that it intended PURA to be the exclusive means of regulating electric utilities in Texas." *Id.* at 323. PURA

expressly states that the regulatory authority has exclusive original jurisdiction over the rates, operations, and services of an electric utility. *See* TEX. UTIL. CODE ANN. §§ 32.001, 33.001. We must presume that the Legislature meant what it said. *See In re Entergy*, 142 S.W.3d at 322. The Legislature made no distinction between regulatory jurisdiction and adjudicatory jurisdiction. It only addressed exclusive jurisdiction. *See* TEX. UTIL. CODE ANN. §§ 32.001, 33.001. If the dispute falls within the definition of rates, operations, or services of an electric utility, then the Legislature intended the regulatory authority to have exclusive original jurisdiction over that matter.

Because they fall within the statutory definitions of "rate" and "services," the City's claims in this case were intended to be addressed by PURA's pervasive regulatory scheme. *See Tara Partners*, 371 S.W.3d at 447. Under the regulatory scheme, the governing body of the municipality or the PUC has original exclusive jurisdiction over the claims. *See* TEX. UTIL. CODE ANN. §§ 32.001, 33.001. Here, the City was required to exhaust its administrative remedies before filing suit in the trial court. *See Tara Partners*, 371 S.W.3d at 447.

We also note that, although not expressly addressed, the appellant in *Tara Partners* raised an argument akin to the regulatory jurisdiction versus adjudicatory jurisdiction argument advocated by the City in this case. In this respect, Tara Partners asserted that the trial court had jurisdiction over the billing dispute

13

because it involved a private contract rather than matters addressing administrative regulation of natural gas rates or services. *See id.* at 443, 447.

To determine the issue, we looked to the language of the statute, as the supreme court directs, to ascertain whether the dispute fell within the exclusive original jurisdiction of the regulatory agency. *See id.* at 447. We determined that "the plain language of GURA defines a 'rate' over which the municipality or Railroad Commission has exclusive original jurisdiction as including a 'contract affecting the compensation, tariff, charge, fare, toll, rental, or classification' charged by a gas utility." *Id.* (citing TEX. UTIL. CODE ANN. § 101.003(12)). We held that "the plain language of GURA provides that contracts affecting charges by a gas utility are considered 'rates' over which the municipality or Railroad Commission has exclusive original jurisdiction, and Tara Partners' claim falls within the stated purpose of GURA's regulations." In short, it is the intent of the Legislature, as reflected in the plain language of the statute, which governs our determination of whether an agency has exclusive jurisdiction over a dispute. *See In re Entergy*, 142 S.W.3d at 322.

The Supreme Court of Texas also has also rejected a plaintiff's argument that, because it involved a private contract, the dispute did not fall under the exclusive original jurisdiction provision in PURA. *Id.* at 323–24. The supreme court explained that the agreement at issue "affected the public interest and, more

14

importantly, was the basis for the PUC's regulatory approval" of Entergy's merger with another entity. *See id.* at 324. The court emphasized that it was the PUC's order approving the merger agreement that had implemented the agreement and provided a basis for the plaintiff's suit. *See id.* The court stated, "Without the PUC order implementing it, the Merger Agreement was practically meaningless. That is, the very administrative character that gives the Merger Agreement effect also gives the PUC the authority to adjudicate disputes arising from the agreement." *Id.*

Similarly, here, the Tariff was filed with, and approved by, the PUC. *See* TEX. UTIL. CODE ANN. § 32.101 (Vernon 2007) (providing that electric utility must file tariff with regulatory authority). The PUC had the authority to approve the Tariff, and it is a natural extension of that authority for the agency to decide, as a regulatory matter, a dispute arising from the Tariff. *See In re Entergy Corp.*, 142 S.W.3d at 324 (citing *Pub. Util. Comm'n of Tex. v. Sw. Bell Tel. Co.*, 960 S.W.2d 116, 122–23 (Tex. App.—Austin 1997, no pet.)). It may also be said that it is the Tariff's administrative character that gives it effect, enabling the City to seek to enforce its terms. In other words, the agency's exclusive jurisdiction over the City's claims *is* regulatory in nature.

Lastly, each party also cites PURA section 17.157 to support its position. That section provides that the PUC may resolve disputes between a "retail

15

customer," such as the City, and a various types of utilities, including an electric utility. *See* TEX. UTIL. CODE ANN. § 17.157(a) (Vernon 2007). The statute authorizes the PUC to take a number of actions to resolve the dispute. *Id.* § 17.157(b). The provision also requires the PUC to adopt procedures to resolve customer disputes. *Id.* § 17.157(c).

CenterPoint asserts that section 17.157 serves to highlight the pervasiveness of PURA's regulatory scheme. As noted by CenterPoint, the Supreme Court of Texas has cited section 17.157 as support for its holding that the PUC had exclusive original jurisdiction to resolve a dispute brought against a telecommunications utility by its customers regarding a surcharge. *See In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 626 (Tex. 2007) (orig. proceeding). We agree with CenterPoint that the detailed and comprehensive language of section 17.157 lends further support to the conclusion that the Legislature intended PURA to be a pervasive regulatory scheme to address disputes such as those in this case.

The City contends that section 17.157 undermines CenterPoint's argument that the City's claims are subject to PURA's exclusive jurisdiction language. Without conceding that any regulatory authority has exclusive original jurisdiction over its claims, the City points out that its own governing body, not the PUC, is the agency with exclusive jurisdiction, as stated in PURA Chapters 32 and 33. *See* TEX. UTIL. CODE ANN. §§ 32.001, 33.001, 33.002.

16

To reiterate, PURA section 33.001(a) provides:

> To provide fair, just, and reasonable rates and adequate and efficient services, the governing body of a municipality has exclusive original jurisdiction over the rates, operations, and services of an electric utility in areas in the municipality, subject to the limitations imposed by this title.

*Id.* § 33.001(a).

A municipality may surrender its jurisdiction to the PUC. *See id.* § 33.002. Here, the City has not surrendered its jurisdiction.

The City argues that, by permitting a retail customer to file a dispute with the PUC, section 17.157 deprives the governing body of a municipality of its exclusive jurisdiction over a dispute because jurisdiction in such cases is no longer exclusively with the municipality. It may also lie with the PUC.

We disagree with the City's statutory interpretation. Sections 17.157 and 33.001(a) can be read in harmony to give effect to both statutes. Section 33.001(a) provides that a municipality has exclusive original jurisdiction "subject to the limitations imposed by this title [PURA]."[5] *Id.* § 33.001(a). Section 17.157 can be read to be such a limitation. That is, it can be read to permit a retail customer to file its dispute with either the PUC or the governing body of the municipality.

---

[5] Similarly, PURA § 32.002 provides, "*Except as otherwise provided by this title*, this subtitle does not authorize the commission to . . . affect the jurisdiction . . . of a municipality exercising exclusive original jurisdiction in that municipality's regulation and supervision of an electric utility in the municipality." TEX. UTIL. CODE ANN. § 33.002 (emphasis added).

17

Providing the retail customer with an additional, or alternative, administrative body with which to file its dispute, does not manifest intent by the Legislature to allow the customer to forego exhaustion of administrative remedies before filing suit in court.

We conclude that, under the clear and express language of PURA, the regulatory authority—whether it is the PUC or the governing body of the municipality—has exclusive original jurisdiction over the City's claims in this dispute. *See id.* §§ 17.157, 32.001, 33.001; *see also Tara Partners*, 371 S.W.3d at 447. We further conclude that the City was required to exhaust its administrative remedies before filing suit. Because the City did not exhaust its administrative remedies, the trial court lacked subject-matter jurisdiction over the City's claims. *See In re Entergy Corp.*, 142 S.W.3d at 321–22. We hold that the trial court properly dismissed the City's claims without prejudice. *See Tara Partners*, 371 S.W.3d at 447.

We overrule the City's first and second issues.

## Conclusion

We affirm the judgment of the trial court.


                                                Laura Carter Higley
                                                Justice

Panel consists of Justices Jennings, Higley, and Sharp.