# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00719-CV

**Continental Imports, Ltd. d/b/a Mercedes Benz of Austin, Appellant**

**v.**

**L. David Brunke in his Official Capacity as Acting Director of The Motor Vehicle Division of the Texas Department of Transportation, and The Motor Vehicle Division of the Texas Department of Transportation, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-07-000508, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Continental Imports, Ltd. d/b/a Mercedes Benz of Austin ("Continental") appeals the trial court's order affirming a final order issued by the Motor Vehicle Division of the Texas Department of Transportation ("the Division"). The Division's final order found that Continental (1) engaged in false, deceptive, unfair, or misleading advertising; (2) failed to notify the Division of a name change; (3) failed to report to the Division the use of assumed names in two of its license renewal applications; and (4) made material misrepresentations in two of its license renewal applications. *See* Tex. Occ. Code Ann. § 2301.651(a)(2) (West Supp. 2011) (board may reprimand license holder that makes material misrepresentation in any application); 16 Tex. Admin. Code §§ 105.2 (2004) (Tex. Motor Vehicle Bd., General Prohibition) (person advertising motor vehicles shall not use false, deceptive, unfair, or misleading advertising), 111.3(d) (2004) (Tex. Motor

Vehicle Bd., General Distinguishing Number) (dealer must record assumed name of legal entity on application for general distinguishing number), 111.11(a)(7) (2004) (Tex. Motor Vehicle Bd., Sanctions) (civil penalties may be assessed against dealer who fails to notify board of dealer's name change).[1]  The final order imposed $76,000 in civil penalties and directed Continental to publish a specific retraction in the automobile advertising section of the Austin American Statesman.  We will sustain some of Continental's appellate issues and overrule others, reverse the trial court's judgment, and remand the case to the agency for further proceedings consistent with this opinion.

## BACKGROUND

Continental has for many years been a franchised Mercedes-Benz dealer licensed by the Division to do business as both "Mercedes-Benz of Austin" and "Continental Cars."[2]  Continental operates its dealership from its licensed location at 6757 Airport Boulevard in Austin.  In February 2002, Continental filed with the Texas Secretary of State a set of assumed name certificates, including "Mercedes-Benz of Georgetown" and "Georgetown Mercedes-Benz."  In March 2002, Continental filed a second set of assumed name certificates that included "Mercedes-Benz of Georgetown & Round Rock" and "Round Rock & Georgetown Mercedes-Benz."

_____

[1]  After the contested-case hearing in this case, the Division's rules were recodified in the Texas Administrative Code.  The provisions of former rule 105.2 are now found in 43 Tex. Admin. Code § 215.242 (2011) (Tex. Dep't of Motor Vehicles, General Prohibition).  The provisions of former rule 111.3(d) are now found in 43 Tex. Admin. Code § 215.133(d) (2011) (Tex. Dep't of Motor Vehicles, General Distinguishing Number).  The provisions of former rule 111.11(a)(7) are now found in 43 Tex. Admin. Code § 215.141(a)(7) (2011) (Tex. Dep't of Motor Vehicles, Sanctions).  Because the Administrative Law Judge's proposal for decision and the Division's final order refer to the former rules, for clarity we will do the same in this opinion.

[2]  The recitations of fact in this section are derived primarily from unchallenged findings of fact adopted by the Division in its final order.

2

Previously, in July 2001, Continental had filed for the assumed name certificate "Mercedes-Benz of Round Rock." Continental had not obtained approval from Mercedes-Benz USA for use of any of these assumed names. After filing the assumed name certificates, Continental placed advertisements in the December 2002 issue of SBC's Smart Yellow Pages and Business White Pages for the Greater Austin 5-County Metro Area using the names "Mercedes-Benz of Georgetown" and "Mercedes-Benz of Round Rock." Calls made to the telephone numbers listed for each of the names used were automatically forwarded to and answered at "Mercedes-Benz of Austin." The address listed for the telephone book listings and advertisements that Continental placed for "Mercedes-Benz of Georgetown" and "Mercedes-Benz of Round Rock" was 6757 Airport Boulevard in Austin. Continental placed similar advertisements in the July 2003 issue of SBC's Smart Yellow Pages for the Austin Northwest Suburban area and the December 2003 issue of SBC's Smart Yellow Pages and White Business Pages for the Greater Austin 5-County Metro Area. The advertisements appeared in additional telephone book publications in 2003 and 2004. Continental did not have permission from Mercedes-Benz USA to place the advertisements or telephone listings, nor was it authorized to do so by Garlyn Shelton, the owner of the dealership that in February 2002 received approval from Mercedes-Benz USA to operate as a franchised dealership in the Georgetown area.[3]

---

[3] In February 2002, Shelton received approval from Mercedes-Benz USA to relocate from Temple to Georgetown, and he began construction of the Georgetown dealership in June 2003. Although Shelton reserved a telephone number for the new dealership in January 2004, Mercedes-Benz USA would not allow him to place an advertisement in the telephone book until the dealership was operational. Thus, the only listings for a Mercedes-Benz dealership in the Georgetown area were those placed by Continental, and all calls to those listings were forwarded to Continental's dealership located in Austin.

In May 2004, Shelton filed a complaint with the Division's Enforcement Section to report problems with the names and telephone numbers Continental was using. Thereafter, the Enforcement Section's Chief Investigator met with Bryan Hardeman, Continental's owner and dealer operator, to inform him that the advertisements appearing in the Yellow Pages and the Business White Pages were in violation of the Division's advertising rules. On June 7, 2004, the Enforcement Section sent Continental a letter notifying it of two alleged violations of Division rule 105.2[4] as follows:

1.  Representing that Mercedes Benz of Georgetown, telephone number 868-8630, and Mercedes Benz of Round Rock, telephone number 828-3274, are authorized Mercedes Benz dealers located at 6757 Airport Blvd., Austin, TX when in fact only Continental Imports Ltd d/b/a Mercedes Benz of Austin d/b/a Continental Cars is licensed by the Board for the sale of motor vehicles at 6757 Airport Blvd., Austin, TX in violation of 16 TAC § 105.2.

2.  Representing that Mercedes Benz of Austin, telephone number 868-8630 is located at 201 E[.] 10th St, Georgetown, TX when in fact Mercedes Benz of Austin is licensed by the Board for the sale of motor vehicles only at 6757 Airport Blvd., Austin, TX in violation of 16 TAC § 105.2.

---

[4] Rule 105.2 provides:

A person advertising motor vehicles shall not use false, deceptive, unfair, or misleading advertising. In addition to a violation of a specific advertising rule, any other advertising or advertising practices found by the Board to be false, deceptive, or misleading, whether or not enumerated herein, shall be deemed violations of the [Texas Occupations] Code, and shall also be considered violations of the general prohibition.

16 Tex. Admin. Code § 105.2 (2004) (Tex. Motor Vehicle Bd., General Prohibition).

4

The letter stated that the advertisements at issue had been published in the July 2003 issue of the SBC Austin Northwest Suburban telephone directory and the December 2003 SBC Greater Austin 5-County Metro Area telephone directory. The letter stated that its purpose was to give Continental notice of the violations and afford it an opportunity to cure them. *See* Tex. Occ. Code Ann. § 2301.203(c) (West 2004) (board may not file complaint alleging violation of board rule relating to advertising until board has notified license holder of alleged violation and given license holder "an opportunity to cure the violation without further proceedings or liability"). The letter also instructed Continental to respond in writing within 15 days to show that it "had received and understood" the letter and to "detail the affirmative steps" it was taking to cure the violation. The letter informed Continental that "[f]ailure to respond within this time period will be taken as a refusal to cure the violation, and a formal complaint will issue." The letter did not, however, specify any particular means by which Continental was to cure the asserted violations.

Continental did not respond to the letter in writing as instructed. Continental contends, however, that it responded to the notice by canceling the advertisements in July 2004 and by having the telephone numbers disconnected in August 2004. The cancellation, however, was too late to prevent the advertisements from appearing in the July 2004 and December 2004 issues of SBC's Smart Yellow Pages and Business White Pages. Thereafter, in August 2004, the Enforcement Section filed with the agency a complaint alleging that Continental had violated rule 105.2 and seeking civil penalties and suspension or revocation of Continental's license. As exhibits to the petition, the Enforcement Section attached copies of the advertisements that appeared in the July 2003 and December 2003 telephone directories.

5

The case was ultimately tried on the Enforcement Section's fourth amended petition, which alleged 27 counts of acts and practices the Enforcement Section contended violated various provisions of the occupations code and the Division's rules. These included 15 counts related to advertisements in telephone directories, three counts related to internet advertising, two counts related to Continental's alleged failure to notify the Division of a name change, six counts related to Continental's alleged failure to notify the Division of assumed names in its license renewal applications, and one count related to violation of the Texas Deceptive Trade Practices Act.

After a contested-case hearing, the Administrative Law Judge (ALJ) issued a Proposal for Decision (PFD) that concluded that Continental committed five violations of rule 105.2 (alleged in counts 3, 4, 5, 8, and 9), two violations of rule 111.11(a)(7) (alleged in counts 19 and 20), four violations of rule 111.3(d) (alleged in counts 22, 23, 25, and 26), and two violations of occupations code section 2301.651(a)(2) (alleged in counts 25 and 26). The ALJ recommended that the Division assess civil penalties of $76,000 and that Continental be ordered to publish a one-quarter page retraction in the automobile advertising section of the Austin American Statesman newspaper for three days. Subsequently, the Division's Acting Director signed a final order adopting the PFD in its entirety, including the ALJ's findings of fact and conclusions of law. As recommended by the ALJ, the final order assessed $76,000 in civil penalties and ordered Continental to publish a retraction. After exhausting its administrative remedies, Continental filed suit for judicial review of the Division's order. The district court affirmed the order and this appeal followed. In eight issues, Continental challenges various aspects of the Division's order and contends that the district court erred in affirming it.

## STANDARD OF REVIEW

Section 2301.751 of the occupations code provides that judicial review of the Division's orders is conducted under the "substantial evidence rule" as set forth in section 2001.174 of the Administrative Procedure Act (APA). *See* Tex. Occ. Code Ann. § 2301.751 (West 2004); Tex. Gov't Code Ann. § 2001.174 (West 2008). In a suit for judicial review of an agency order pursuant to the APA, a reviewing court may affirm the agency decision in whole or in part, and must:

> reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (A)     in violation of a constitutional or statutory provision;
>
> (B)     in excess of the agency's statutory authority;
>
> (C)     made through unlawful procedure;
>
> (D)     affected by other error of law;
>
> (E)     not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>
> (F)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174 (1), (2). Pursuant to section 2001.174(2), if the reviewing court finds any of the six categories of "error" listed and determines that such error prejudiced the "substantial rights" of the party seeking review, the court must reverse and/or remand the case for further proceedings. *Id.* § 2001.174(2).

7

## DISCUSSION

In its first issue, Continental asserts that the Division did not have the authority to order it to print a retraction. The final order purported to order the printed retraction "in accordance with Tex. Occ. Code Ann. § 2301.203(c) and [16 TAC § 105.32(c)]." Section 2301.203(c) provides:

> The board may not file a complaint alleging a violation of this chapter or a board rule relating to advertising until the board has notified the license holder of the alleged violation and given the license holder an opportunity to cure the violation without further proceedings or liability.

Tex. Occ. Code Ann. § 2301.203(c) (West 2004). Rule 105.32(c) provides in pertinent part:

> As part of the cure procedure, the Board may require a licensee, who allegedly violated an advertising provision, to publish a retraction notice to effect an adequate cure of the alleged violation.

16 Tex. Admin. Code § 105.32(c) (2004) (Tex. Motor Vehicle Bd., Enforcement).[5] Continental contends that the referenced statute and rule authorize the Division to order a retraction only as part of a pre-contested case cure procedure. According to Continental, once the Enforcement Section has filed a complaint, this statute and rule no longer apply and, consequently, the Division had no authority to order the retraction as part of the punishment imposed on Continental after the contested-case hearing. Even assuming that Continental is correct on that point, however, authority

---

[5] The provisions of former rule 105.32 are now found in 43 Tex. Admin. Code § 215.270(c) (2011) (Tex. Dep't of Motor Vehicles, Enforcement).

for the Division to order a printed retraction is found in a separate provision—occupations code section 2301.153. *See* Tex. Occ. Code Ann. § 2301.153(a)(20)(b) (West 2004). That section provides:

> Notwithstanding any other provision of law, the board has all powers necessary, incidental, or convenient to perform a power or duty expressly granted under this chapter, including the power to:
>
> . . . .
>
> (20) enter an order requiring a person to:
>
> . . . .
>
> (B) perform an act other than the payment of money.

*Id.* Therefore, regardless of whether the Division was without authority to order a retraction pursuant to 2301.203(c) and rule 105.32(c) after the proceedings had gone beyond the pre-complaint cure procedure, the Division was plainly authorized to order such a retraction pursuant to its general powers as set forth in section 2301.153 once it found that Continental had engaged in false, deceptive, or misleading advertising in violation of rule 105.2. *See* Tex. Occ. Code Ann. § 2301.651(3) (West 2004) (authorizing board to reprimand license holder that violates board rule).

In its second issue, however, Continental argues that the Division's order that it print a retraction cannot be upheld pursuant to section 2301.153 because the order specifically states that the retraction was ordered "in accordance with" section 2301.203(c) and rule 105.32(c). Citing *City of El Paso v. El Paso Electric Co.*, 851 S.W.2d 896, 899 (Tex. App.—Austin 1993, writ denied), and *Professional Mobile Home Transport v. Railroad Commission*, 733 S.W.2d 892, 904 (Tex. App.—Austin 1987, writ ref'd n.r.e.), Continental maintains that when an agency specifically

identifies the legal basis for its decision, the reviewing court may not affirm the agency's decision on a different legal basis. The cases cited, however, employ the principle that a reviewing court may not sustain the agency's decision on a *factual* basis not addressed by the agency. *See City of El Paso*, 851 S.W.2d at 899-900 (refusing to uphold agency order on factual basis different from that relied on by agency); *Professional Mobile Home Transport*, 733 S.W.2d at 903-04 (addressing argument that evidence was insufficient to reasonably support agency's findings and discussing whether agency's findings show that agency considered and ascertained satisfaction of certain statutory criteria). This case presents a different issue—whether an agency order can be upheld by any *legal* basis shown in the record. It is well established that a reviewing court is obligated to sustain an agency order on any such legal basis. *See, e.g.*, *Public Util. Comm'n v. Southwestern Bell Tel. Co.*, 960 S.W.2d 116, 121 (Tex. App.—Austin 1997, no pet.) (appellate court is obligated to sustain agency order on any legal basis shown in record);[6] *City of League City v. Texas Water Comm'n*, 777 S.W.2d 802, 807 (Tex. App.—Austin 1989, no writ) ("We are not bound by any particular legal ground made a basis for the Commission's ruling, provided that a valid basis exists for the action taken.") (citing *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984), *Railroad Comm'n v. City of Austin*, 524 S.W.2d 262, 279 (Tex. 1975), and *Gulf Land*

---

[6] In *Southwestern Bell Telephone*, this Court observed:

> This principle is sometimes confused with the erroneous idea that a reviewing court must sustain an agency order on *any* "valid basis" shown in the record. This does *not* mean, however, that the reviewing court may sustain the agency upon a *factual* basis not passed upon by the agency. It means that the reviewing court may sustain the agency order upon any *legal* basis shown in the record.

*Public Util. Comm'n v. Southwestern Bell Tel. Co.*, 960 S.W.2d 116, 121 n.7 (Tex. App.—Austin 1997, no pet.) (emphasis in original).

10

*Co. v. Atlantic Ref. Co.*, 131 S.W.2d 73, 84 (Tex. 1939)); *see also Pretzer v. Motor Vehicle Bd.*, 138 S.W.3d 908, 914 (Tex. 2004) ("We are mindful of the rule that '[a] reviewing court is not bound by the reasons given by an agency in its order, provided there is a valid basis for the action taken by the agency.'" (quoting *Texas Health Facilities Comm'n*, 665 S.W.2d at 452-53)).  Having found that Continental violated one of its rules, the Division was authorized pursuant to section 2301.153(20)(B) to order Continental to print a retraction.  Because there is at least one valid basis for the agency action, we are obligated to uphold it.

Continental also argues that the ordered retraction cannot be upheld because, to the extent it rests on a ground not identified by the Enforcement Section or the Division in the notice of hearing, the fourth amended petition, or the final order, it violates government code section 2001.152(a)(3), which requires that a notice of hearing in a contested case include, among other things, "a reference to the particular sections of the statutes and rules involved."  *See* Tex. Gov't Code Ann. § 2001.052(a)(3) (West 2008).  Continental reads the notice statute to require the agency to include in the notice a reference to the specific statutory provision that authorizes the agency to impose the penalty it ultimately chooses to impose.  Nothing in the statute, however, requires the agency to notify a party to a contested-case hearing of the specific *penalty* it will impose in the event it finds a violation of a statue or rule or to apprise it of the agency's general powers.  Rather, the purpose of the notice is to provide the party to a contested-case hearing with an opportunity to respond and present evidence and argument on each issue in the case by informing it of which statutes or rules it contends the party violated.  *See id.* § 2001.051(2) (party to contested case is entitled to opportunity to respond and to present evidence and argument on each issue involved in case).  The notice and attached petition that were provided to Continental gave adequate

11

notice of the statutes and rules it was alleged to have violated as well as the factual basis for the alleged violations. This satisfied the statutory requirements. We overrule Continental's first and second issues.

In its third issue, Continental contends that the district court erred in affirming the Division's findings and conclusion that it violated occupations code section 2301.651(a)(2) when it failed to report the assumed name "Mercedes Benz of Round Rock" in its 2003 and 2004 license renewal applications.[7] Section 2301.651(a)(2) provides:

> The board may deny an application for a license, revoke or suspend a license, place on probation a person whose license has been suspended, or reprimand a license holder if the applicant or license holder:
>
> . . . .
>
> (2)    makes a material misrepresentation in any application or other information filed under this chapter or board rules[.]

Tex. Occ. Code Ann. § 2301.651(a)(2). Continental argues that its failure to report certain assumed names when filling out its application is not a material misrepresentation, but rather an omission—a failure to report, notify, or disclose. *See* 16 Tex. Admin. Code § 111.3(d) (dealer must record assumed name on application for general distinguishing number). Consequently, Continental maintains that while it may have violated a Division rule requiring that it inform the Division of all its assumed names, its failure to include those names on its license renewal application did not

---

[7] This issue challenges the Division's findings and conclusions related to the portions of counts 25 and 26 that allege that Continental's failure to report an assumed name violated occupations code section 2301.651(a)(2). *See* Tex. Occ. Code Ann. § 2301.651(a)(2) (West Supp. 2011) (board may reprimand license holder that makes material misrepresentation in any application).

constitute a *material misrepresentation* that violated section 2301.651(a)(2). The Division counters that it reasonably interpreted this section's prohibition of material misrepresentations on license renewal applications to include material omissions. This issue, therefore, turns principally on the construction of a statute, a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008).

Our primary objective in construing statutes is to give effect to the legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or unless the plain meaning would lead to absurd or nonsensical results that the legislature could not have intended. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We look to the entire act in determining the legislature's intent with respect to a specific provision. *Upjohn v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.—Austin 2000, pet. denied). A court should strictly construe a statute imposing a penalty and construe it against those seeking to impose the penalty and in favor of those on whom such penalties would be imposed. *Howell v. Mauzy*, 899 S.W.2d 690, 704-05 (Tex. App.—Austin 1994, writ denied).

When a statute is ambiguous, we are required to give "serious consideration" to the construction of the statute by the administrative agency charged with its enforcement, *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011), and uphold the agency's interpretation if it is reasonable, *First Am. Title Ins. Co.*, 258 S.W.3d at 632 (quoting *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). We do not defer to

13

an agency interpretation when a statute is unambiguous. *See Texas Citizens*, 336 S.W.3d at 624 & n.6. We also "'do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or [which] deal with a nontechnical question of law.'" *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (quoting 2B Singer, *Sutherland Statutory Construction* § 49.04, at 23-24 (6th ed. 2000)).

Employing these rules of statutory construction, we conclude that the "material misrepresentation" prohibited by section 2305.651(a)(c) does not encompass an omission or failure to disclose such as Continental's failure to disclose all of its assumed names on its license renewal application. In various places throughout the occupations code, the legislature expressly distinguishes between acts and omissions. *See, e.g.*, Tex. Occ. Code Ann. §§ 101.201(b)(1) (West 2004) (false advertising includes advertising that "makes a *material misrepresentation* of fact or *omits a fact* necessary to make the statement as a whole not materially misleading"), .157(a) (West 2004) ("[T]he director or a board member, hearings examiner, or division employee is not personally liable for damages resulting from an official *act or omission* unless the *act or omission* constitutes intentional or malicious malfeasance."), .803(a) (West 2004) ("[A] person who receives notice from the board of a statutory stay imposed by this chapter may not allow or commit any *act or omission* that would . . . violate this chapter.") (all emphases added). And, significantly, the Division has a separate rule that specifically covers the conduct at issue—rule 111.3(d), which requires an applicant to record its assumed named on its application. *See* 16 Tex. Admin. Code § 111.3(d). Indeed, in the present case the Division found that the same conduct it contends was a violation of occupations code section 2301.651(a)(2) was also a violation of rule 111.3(d) and assessed penalties pursuant to that rule.

We conclude that the unambiguous language of section 2301.651(a)(2) indicates that it covers only material misrepresentations—other statutes and rules apply to omissions and failures to notify, or disclose information to, the Division. To the extent there is any ambiguity regarding whether this section applies to omissions, we are obligated to construe the statute strictly and in favor of those upon whom it would impose a penalty. *See Howell*, 899 S.W.2d at 704-05. Having concluded that Continental's conduct in failing to disclose all its assumed names on it license renewal applications was not a violation of occupations code section 2301.651(a)(2), we sustain Continental's third issue.

In its fourth issue, Continental asserts that the district court erred in affirming penalties assessed for advertising violations for which it was not provided the statutorily required notice and opportunity to cure. *See* Tex. Occ. Code Ann. § 2301.203(c) (board may not file complaint alleging violation of board rule relating to advertising until board has notified license holder of alleged violation and given license holder opportunity to cure violation without further proceedings or liability).[8] Continental contends that the only notice it received was the June 2004 letter advising it that the Enforcement Section considered the July 2003 and December 2003 telephone book advertisements to be false and misleading. Consequently, Continental takes the position that the Division was not authorized to assess penalties for subsequent advertising violations for which Continental never received a notice letter giving it an opportunity to cure. The Division, however, argues that all the alleged advertising violations arose out of the same conduct—"the use of assumed names coupled with misleading phone numbers"—and that once Continental was

---

[8] This issue challenges the Division's findings and conclusions related to counts 5, 8, 9, 19, 20, 22, 23, 25, and 26.

15

notified that such conduct constituted an advertising violation, the Enforcement Section was not required to provide Continental notice and an opportunity to cure subsequent violations involving the same conduct.

This issue, too, turns on statutory construction. The statute plainly states that the board "*may not* file a complaint alleging a violation . . . relating to advertising until the board has notified the license holder *of the alleged violation* and given the license holder an opportunity to cure *the violation* without further proceedings or liability." *See id.* (emphasis added). This language unambiguously requires separate notice and an opportunity to cure each advertising violation before that particular advertising violation can be included in any complaint filed by the Enforcement Section. In its fourth amended petition, the Enforcement Section treated each deceptive advertisement as a separate violation and sought discrete penalties for each such violation. It was therefore required to give Continental notice and an opportunity to cure each violation before including it in the complaint.

The Division argues that such a reading of the statute creates an "unworkable" scenario in which repeated violations of the same conduct require the Enforcement Section to "re-send an opportunity-to-cure letter for each of those continuing violations" and that "cases would be constantly halted and restarted." While providing notice and an opportunity to cure each violation might be inconvenient and time consuming, that is what the statute requires. We may not rewrite the statute under the guise of construing it. *See Stockton v. Offenbach*, 336 S.W.3d 610, 619 (Tex. 2011). Moreover, in the event of a repeat violator, the Division has the power to "issue cease and desist orders in the nature of temporary or permanent injunctions." *See* Tex. Occ. Code Ann. § 2301.153(a)(18) (West 2004). We conclude that the Enforcement Section was not authorized to

16

include in its complaint counts related to advertising violations for which it did not give Continental notice and an opportunity to cure.

We do not, however, agree with Continental that this holding requires reversal of all of the findings of fact and conclusions of law related to the violations alleged in counts 5, 8, 9, 19, 20, 22, 23, 25, and 26 of the fourth amended petition for which no notice was given. Rather, it only affects those counts that relate to *advertising* violations. We therefore consider each of the counts to determine whether it is an advertising violation.

Counts 5, 8, and 9 relate to advertising Mercedes-Benz of Georgetown and Mercedes-Benz of Round Rock in telephone directories. These are clearly advertising violations for which no notice was given, and the Division should have dismissed those counts as Continental requested. Thus, any findings and conclusions relating to those counts are erroneous.

Counts 19 and 20 allege that Continental failed to notify the Division of a "name change" within ten days of the change, as required by rule 111.11(a)(7). *See* 16 Tex. Admin. Code § 111.11(a)(7). This rule provides:

> (a) Revocation/Denial. The director may deny, revoke or suspend a dealer's license (general distinguishing number) or assess civil penalties if that dealer:
>
> . . . .
>
> > (7)     fails to notify the Board of a dealer's name change or ownership within 10 days after such change; . . . .

*Id.* It is undisputed that Continental did not change its legal name. The Enforcement Section and the Division, however, take the position that using the assumed names "Mercedes-Benz of Georgetown" and "Mercedes-Benz of Round Rock" in the marketplace, specifically by advertising

17

in telephone books with those names, constituted a "name change" as that term is used in the rule. In the PFD the ALJ stated that: "The plain meaning of a name change includes the use of the two additional names in operating and advertising its business." Continental disputes the Division's interpretation of the rule and asserts that "name change" means changing the entity's legal name. We need not decide which interpretation is correct, however, because under the Division's theory, Continental's violation of the statute resulted from its use of the assumed names *in its advertisements*. Consequently, those violations are ones "related to advertising" for which the Enforcement Section was required to give Continental notice and an opportunity to cure before including it in a complaint. The Division should have dismissed these violations, as Continental requested, and any findings and conclusions related to these alleged violations are therefore erroneous.

Counts 22, 23, 25, and 26 allege that Continental violated rule 111.3(d) by not reporting the assumed names "Mercedes-Benz of Georgetown" and "Mercedes-Benz of Round Rock" on its license renewal applications filed in April 2003 and in March 2004.[9] These counts do not allege violations "related to advertising," and the Enforcement Section was not required to give Continental notice before including these counts in its complaint. In summary, we sustain Continental's fourth issue with regard to counts 5, 8, 9, 19, and 20 of the fourth amended petition and overrule it with regard to counts 22, 23, 25, and 26.

---

[9] Counts 25 and 26 also include the allegations that Continental violated the occupations code's section 2301.651(a)(2) prohibition on making a material misrepresentation in any application filed with the Division. We have already concluded that the district court erred in affirming the Division's conclusion that Continental's omission of the assumed names in its license renewal application constituted a material misrepresentation.

18

In its fifth issue, Continental contends that the district court erred in affirming the Division's findings and conclusion that it violated rule 111.11(a)(7) by failing to notify the Division of a "name change." The Division's allegations with regard to this rule violation were included in counts 19 and 20 of the fourth amended petition. Because we have already concluded that the Division should have dismissed these counts for lack of notice, we need not address this issue.

In its sixth issue, Continental complains of the Division's assessment of civil penalties for violations of both rule 111.3(d) and occupations code section 2301.651(a)(2). In counts 25 and 26, the Enforcement Section alleged that Continental's failure to report the assumed name "Mercedes-Benz of Round Rock" in its April 2003 and its March 2004 license renewal applications violated both rule 111.3(d) and section 2301.651(a)(2). The Division agreed and assessed penalties under both the rule and the statute. Continental complains that this was improper "stacking" of penalties and resulted in the imposition of penalties that violated the per-violation statutory caps established by transportation code section 503.095 and occupations code section 2301.801(a). *See* Tex. Transp. Code Ann. § 503.095(a) (West 2007) (person who violates rule adopted under this chapter is subject to civil penalty of not less than $50 or more than $1,000); Tex. Occ. Code Ann. § 2301.801(a) (West 2004) (amount of penalty may not exceed $10,000 for each violation). We have already concluded that the Division erred in finding that the failure to report the assumed name was a "material misrepresentation" that violated section 2301.651(a)(2). Any penalties assessed for violations of section 2301.651(a)(2) as alleged in counts 25 and 26 will necessarily be eliminated. Continental's sixth issue is therefore moot.

Continental's seventh issue asserts that the Division's findings that its advertisements were false, deceptive, unfair, or misleading were not supported by substantial evidence. Under

19

substantial evidence review of fact-based determinations, "[t]he issue for the reviewing court is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action." *See State v. Public Util. Comm'n*, 344 S.W.3d 349, 355-56 (Tex. 2011) (quoting *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999)). The evidence in the record may even preponderate against the decision of the agency and nonetheless amount to substantial evidence. *Texas Health Facilities Comm'n*, 665 S.W.2d at 452.

The record in the present case includes ample evidence that Continental's advertisements caused confusion and were misleading. For example, Shelton testified that when he first opened his dealership in 2004 he was surprised by the low call volume. Eventually a customer notified him that there was a listing for a "Mercedes-Benz of Georgetown" with a number different from his company's number. A number of customers told Shelton that they had a hard time finding his location because they would call the other number and end up speaking with someone from Continental. There was evidence that some customers arrived at Shelton's dealership for a service appointment only to find out that they had actually booked an appointment with Continental in Austin. A sales manager for Shelton's dealership testified that several customers came to the dealership upset because, although they had seen the dealership in Georgetown, when they called what they believed to be that location to ask a question or make an appointment, they were routed to Continental's Airport Boulevard location. Moreover, there is substantial evidence that the advertisements themselves are deceptive on their face as they could lead a customer to reasonably believe that they were calling an authorized Mercedes-Benz dealership located in Round Rock or Georgetown, when in fact they were calling Continental in Austin. We are unpersuaded by Continental's argument that the "net overall effect" of the advertisements was not misleading or

20

deceptive. Applying the correct standard for reviewing agency findings, which "does not allow a court to substitute its judgment for that of the agency," *Railroad Comm'n v. Torch Operating, Co.*, 912 S.W.2d 790, 792 (Tex. 1995), we conclude that the Division's findings that Continental's advertisements were false, misleading, or deceptive are supported by substantial evidence.

In its eighth issue, Continental complains that the Division's findings and conclusions state that Continental violated statutes and rules that "cannot be violated," specifically occupations code section 2301.651(a)(3), rule 111.11(a)(23), and transportation code section 503.038(a)(14). *See* Tex. Occ. Code Ann. § 2301.651(a)(3) (West Supp. 2011) (board may reprimand license holder that "violates this chapter or a board rule or order"); Tex. Transp. Code Ann. § 503.038(a)(14) (West Supp. 2011) (department may cancel dealer's general distinguishing number if dealer "otherwise violates this chapter or rule adopted under this chapter"); 16 Tex. Admin. Code § 111.11(a)(23) (2004) (Tex. Motor Vehicle Bd., Sanctions) (director may assess civil penalties if dealer "violates any state or federal law or regulation relating to the sale of a motor vehicle").[10] Continental argues that these provisions each function as "catchall provisions" authorizing the Division to fine or sanction an applicant or licensee for violating its rules and, as such, cannot themselves be violated. We agree with the Division that this argument is academic because in this case there is no violation that is found to be solely of one of the "catchall provisions." Each of the challenged findings and conclusions finds violations of rules that Continental concedes can be violated. For example, as the Division observes in its brief, finding of fact 75 states that:

---

[10] The provisions of former rule 111.11(a)(23) are now found in 43 Tex. Admin. Code § 215.141(a)(23) (2011) (Tex. Dep't of Motor Vehicles, Sanctions).

Respondent violated 16 TAC § 105.2 and Occupations Code § 2301.651(a)(3) by using false, deceptive, unfair, and misleading advertising related to Mercedes-Benz of Georgetown and Mercedes-Benz of Round Rock in a December 2003 SBC telephone directory.

Each violation is similarly linked to a statute or rule that Continental acknowledges can be violated and can be the basis for assessing civil penalties or other punishment. The Division's recitation in a finding or conclusion of a separate provision, even if it is one that cannot be "violated," does not render the finding or conclusion erroneous. We overrule Continental's eighth issue.

## CONCLUSION

As set forth herein, we conclude that the trial court did not err in affirming the portion of the final order directing Continental to publish a retraction. We also conclude that the Division's findings that Continental engaged in false, misleading, or deceptive conduct are supported by substantial evidence. The trial court erred, however, in affirming the Division's order assessing civil penalties for violations of occupations code 2301.651(a)(2) as alleged in counts 25 and 26 of the fourth amended petition because that provision prohibits material misrepresentations as opposed to omissions. Additionally, we conclude that the Division should have dismissed counts 5, 8, 9, 19, and 20 of the fourth amended petition because the Enforcement Section failed to provide Continental notice and an opportunity to cure these advertising violations as required by statute. In summary, we sustain Continental's third issue and its fourth issue as to counts 5, 8, 9, 19, and 20. We overrule Continental's first and second issues, its fourth issue as to counts 22, 23, 25, and 26, and its seventh and eighth issues. Our disposition renders Continental's fifth and sixth issues moot. Consequently,

22

we reverse the trial court's judgment and remand the case to the Division for further proceedings consistent with this opinion.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Reversed and Remanded

Filed:   December 30, 2011